**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-2659

FEDERAL TRADE COMMISSION, and
CONSUMER FINANCIAL PROTECTION BUREAU,

      Plaintiffs,

v.

TRANSUNION RENTAL SCREENING SOLUTIONS, INC., a Delaware corporation, and
TRANS UNION LLC, a Delaware limited liability company,

      Defendants.

---

## COMPLAINT

---

The Federal Trade Commission ("FTC") and Consumer Financial Protection Bureau ("Bureau") (collectively, "Plaintiffs") bring this action against TransUnion Rental Screening Solutions, Inc. ("TURSS") and Trans Union LLC ("TU LLC") (collectively, "Defendants") and allege as follows:

1.      The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and Section 621(a)(1) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s(a)(1), which authorize the FTC to seek, and the Court to order, permanent injunctive relief and other relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FCRA, 15 U.S.C. §§ 1681-1681x.

1

2.      The Bureau brings this action under Sections 1054(a) and 1055 of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5564(a) and 5565, and Section 621(b) of the FCRA, 15 U.S.C. § 1681s(b)(1)(H), which authorize the Bureau to seek, and the Court to order, permanent injunctive relief, monetary relief, civil money penalties, and other relief for Defendants' acts or practices in violation of the FCRA, 15 U.S.C. §§ 1681-1681x.

## INTRODUCTION

3.      In numerous instances, Defendants have violated the FCRA by failing to follow reasonable procedures to assure maximum possible accuracy of information in background screening reports that landlords and others rely on to, among other things, make rental decisions about specific consumers ("Tenant Screening Reports"), and by failing to clearly and accurately disclose to consumers the sources of information in background screening reports.

4.      Inaccurate and outdated information in Tenant Screening Reports can significantly interfere with consumers' ability to find housing and cause them harm, including, but not limited to, prolonged housing searches, additional application fees, time and money spent correcting errors, higher rental payments, temporary housing costs, and denial of housing.

5.      Plaintiffs filed this Complaint to stop Defendants' unlawful practices, to obtain relief for harmed consumers, and to obtain a penalty.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331, 1337(a), and 1345, and 12 U.S.C. § 5565(a)(1).

7.      Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) and (b)(2), 15 U.S.C. § 53(b), and 12 U.S.C. § 5564(f), because Defendants are located, reside, or do business in this district and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PLAINTIFFS

8.      The FTC is an independent agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court civil action by its own attorneys. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the FCRA, 15 U.S.C. §§ 1681-1681x, which imposes duties upon consumer reporting agencies.

9.      The Bureau is an independent agency of the United States Government created by the CFPA. 12 U.S.C. § 5491(a). The Bureau is charged with enforcing Federal consumer financial laws, including the CFPA and the FCRA. 12 U.S.C. §§ 5491(a), 5481(12), (14). The Bureau is authorized to initiate federal district court proceedings by its own attorneys to address violations of Federal consumer financial law, including the CFPA and the FCRA. 12 U.S.C. § 5564(a)-(b).

## DEFENDANTS

10.     Defendant TURSS is a Delaware corporation with its principal place of business in Greenwood Village, Colorado and is a wholly owned subsidiary of Defendant TU LLC.

3

11.     Defendant TU LLC is a Delaware limited liability company with its principal place of business in Chicago, Illinois. TU LLC operates TURSS as a business unit and performs a variety of shared services for TURSS, including legal and compliance, accounting and finance, marketing and public relations, data science, and human resources. TU LLC also develops and approves FCRA-related policies and procedures used by TURSS. Throughout the relevant time period, TU LLC, through its officers or employees, has been responsible for, among other things, management and oversight of TURSS's FCRA compliance policies and procedures, including monitoring and testing for regulatory compliance and compliance training. TU LLC participated in, directed, or authorized the acts and practices set forth in this Complaint.

12.     Defendants transact or have transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, Defendants have furnished background reports about consumers in Colorado and throughout the United States.

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

13.     Enacted in 1970, the FCRA became effective on April 25, 1971, and has been in force since that date. It has been amended several times, including by the Fair and Accurate Credit Transactions Act in December 2003 and the Dodd-Frank Act in July 2010.

14.     TURSS, through its provision of tenant and employment background screening reports, and TU LLC, through its provision of credit and other reports, are and have been "Consumer Reporting Agencies," as defined in Section 603(f) of the FCRA, 15 U.S.C. § 1681a(f). That section defines a Consumer Reporting Agency as:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing [C]onsumer [R]eports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing [C]onsumer [R]eports.

Defendants regularly sell in interstate commerce information on consumers that they assemble or evaluate for the purpose of furnishing Consumer Reports to third parties, as described further below.

15.     The FCRA imposes several obligations on Consumer Reporting Agencies, including obligations to: (1) follow reasonable procedures to assure the maximum possible accuracy of the information in Consumer Reports, 15 U.S.C. § 1681e(b), and (2) upon a consumer's request, disclose to the consumer all information contained in the consumer's file and the sources of the information, 15 U.S.C. § 1681g(a).

16.     Pursuant to § 621 of the FCRA, 15 U.S.C. § 1681s, a violation of the FCRA constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### TURSS's Background Screening Reports Are Consumer Reports Subject to the Requirements of the FCRA

17.     TURSS has furnished background screening reports about consumers to thousands of client rental property owners, property management companies, employers, and other background screening companies throughout the United States, to, among other things, assist in tenant and employee selection. These background screening reports may include public record information, including criminal records and records related to residential eviction

proceedings ("Eviction Proceeding Records"), obtained from multiple sources. In addition, the background screening reports may include credit information obtained from Defendant TU LLC.

18.     The background screening reports that TURSS has sold to clients are "Consumer Reports" as defined in Section 603(d) of the FCRA, 15 U.S.C. § 1681a(d). They are communications of information, including public record and credit information, by a Consumer Reporting Agency; the reports bear on, among other things, consumers' credit worthiness, general reputation, and personal characteristics; and they are used or expected to be used as a factor in determining the consumer's eligibility for employment or for rental housing pursuant to Section 604(a)(3) of the FCRA, 15 U.S.C. § 1681b(a)(3).

### Eviction Proceeding Records and Events

19.     The process of attempting to evict a tenant can result in a variety of different events being reported on the court record ("Events"). These Events could include the filing of a new civil matter to begin the process with the court (also known as a civil new filing) and the filing of an outcome of the proceeding. An eviction might also have post-judgment filings, such as a satisfaction of judgment. These Events are reflected in Eviction Proceeding Records.

20.     Eviction Proceeding Records may also include, among other items, the amount sought by the plaintiff landlord, any judgment amount that the court awards, and amounts owed that reflect consumer payments on a debt.

21.     Courts may seal or expunge the records reflected in Eviction Proceeding Records at the request of a consumer or pursuant to applicable state laws, among other reasons.

22.     TURSS has furnished hundreds of thousands of Consumer Reports containing Eviction Proceeding Records to clients every year.

### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

23.     Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b), requires that "[w]henever a [C]onsumer [R]eporting [A]gency prepares a [C]onsumer [R]eport it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

24.     In numerous instances, TURSS has failed to follow reasonable procedures to assure maximum possible accuracy of Eviction Proceeding Records in its Tenant Screening Reports. TURSS has not followed reasonable procedures to: (1) prevent the inclusion of multiple entries for the same eviction case in Eviction Proceeding Records, (2) accurately report the case disposition in Eviction Proceeding Records, (3) accurately label data fields in Eviction Proceeding Records, and (4) prevent the inclusion of sealed Eviction Proceeding Records.

25.     TURSS's failure to follow reasonable procedures to assure maximum possible accuracy of Eviction Proceeding Records has been knowing and reckless.

### Multiple Entries for a Single Eviction Case

26.     TURSS has failed to follow reasonable procedures to prevent the inclusion of multiple entries for the same eviction case in Eviction Proceeding Records in Tenant Screening Reports.

27.     When reporting Eviction Proceeding Records in Tenant Screening Reports, TURSS's procedure has been to display each Event in a case as a separate entry in the report.

28. TURSS also previously reported Events from one case interspersed with Events related to other cases.

29. For example, prior to April 2021, TURSS would display a single eviction case that had two Events—such as a civil new filing and a judgment of possession—as two separate entries. On the same report, TURSS would also display a second eviction case that had two Events—such as a civil new filing and a civil dismissal—as two separate entries, with the entries for the second case interspersed among the entries from the first case. As a result, the consumer's Tenant Screening Report would display four separate entries when there were only two eviction cases.

30. In April 2021, TURSS began to group all Events for a single eviction case together. TURSS only took this step after receiving a Civil Investigative Demand from the FTC. TURSS continued to provide the old versions of the reports to some customers.

31. TURSS's procedures have caused consumer eviction histories to appear more voluminous than the actual number of cases present and have resulted in incorrect and misleading information about the number of eviction cases relating to a particular consumer.

32. Even when grouped together, there have continued to be multiple entries for a single case, and consumer eviction histories can still appear more voluminous than the actual number of eviction cases.

**Inaccurate Dispositions for Eviction Cases**

33.    TURSS has failed to follow reasonable procedures to assure that the Eviction Proceeding Records in Tenant Screening Reports accurately reflect the true or current status of the public records, such as the final disposition of the case.

34.    In numerous instances, TURSS has provided Tenant Screening Reports with errors including Eviction Proceeding Records that do not identify a final disposition and merely indicate that an eviction case was initiated, even if a later or final disposition is available in public records. TURSS has also provided Tenant Screening Reports with Eviction Proceeding Records that have an incorrect final disposition, such as reporting a judgment for the plaintiff when a case was actually dismissed.

35.    In numerous instances, the final disposition or other update that was missing or incorrect had occurred months or years prior to the date of the Tenant Screening Report.

36.    TURSS has received numerous consumer disputes regarding the errors described in Paragraph 34 that should have alerted it to this problem.

37.    TURSS purchases the information that goes into Eviction Proceeding Records from a third-party vendor, LexisNexis Risk and Information Analytics Group, Inc. ("LexisNexis").

38.    TURSS has not imposed specific requirements on LexisNexis regarding the accuracy and completeness of information in Eviction Proceeding Records. Indeed, TURSS's contract with LexisNexis has provided that:

> [LexisNexis] will use reasonable efforts to deliver the [LexisNexis] Services and to compile information gathered from public records used in the provision of the

[LexisNexis] Services; provided, however, that [TURSS] accepts all information "AS IS." [TURSS] acknowledges and agrees that [LexisNexis] obtains its data from third-party sources, which may or may not be completely thorough and accurate, and that [TURSS] shall not rely on [LexisNexis] for the accuracy or completeness of information supplied through the [LexisNexis] Services.

39.     Prior to April 2020, TURSS's procedures allowed it to report Eviction Proceeding Records without regard to when an update on the records was last obtained from a particular source. In April 2020, TURSS implemented process changes in an attempt to reduce the number of Eviction Proceeding Records it reported with out-of-date dispositions. But TURSS only took these steps after receiving a Civil Investigative Demand from the FTC.

**Inaccurate Labeling of Information in Eviction Proceeding Records**

40.     TURSS has failed to follow reasonable procedures to label the fields in Eviction Proceeding Records in Tenant Screening Reports to accurately describe the nature of the information populated in that field.

41.     Until at least early 2019, TURSS included a field for Eviction Proceeding Records in Tenant Screening Reports that it labeled or described as a "Judgment Amount."

42.     However, the amounts that TURSS populated in this field were not necessarily a judgment amount awarded by a court. Instead, in many instances, TURSS used this field for amounts representing any money the plaintiff in the eviction case alleged that the consumer owed.

43.     The term "Judgment Amount" was inaccurate and misleading because it falsely represented that a court had ordered the amount due in a judgment.

10

44.     For example, TURSS included amounts in the "Judgment Amount" field even when there was no final disposition in an eviction case or when an eviction case was dismissed or resolved in the tenant's favor, giving the impression that there was a final judgment of a particular amount against a tenant when there was none.

45.     In March 2019, TURSS changed the name of this field in at least some of its reports to "Amount." However, this vague label still does not assure maximum possible accuracy because TURSS has populated this field with a variety of figures, including the amount alleged due by a landlord when the case was filed—which may or may not be owed by a consumer, a judgment amount, or the remaining amount owed by the tenant on a judgment.

**Reporting Sealed Records**

46.     TURSS has failed to follow reasonable procedures to prevent the inclusion of sealed Eviction Proceeding Records in Tenant Screening Reports.

47.     TURSS maintains a database with Eviction Proceeding Records that are supplied by LexisNexis.

48.     According to TURSS, LexisNexis provides updates that permit TURSS to identify and delete Eviction Proceeding Records that could no longer be located, and thus may have been sealed or restricted from the public record after being supplied to TURSS.

49.     Prior to November 2021, TURSS did not have procedures to ensure that the updates from LexisNexis would allow TURSS to identify and delete all Eviction Proceeding Records in TURSS's database that may have been sealed after being supplied to TURSS.

11

Specifically, the updates may not have included changes to eviction cases more than one year old if the only record was a civil new filing, even if those records were subsequently sealed.

50.    TURSS had notice no later than June 2018 that the records referenced in Paragraph 49 may not have been updated.

**Results of Failure to Follow Reasonable Procedures**

51.    As a result of TURSS's failure to follow reasonable procedures to assure maximum possible accuracy, in multiple instances, TURSS has provided Consumer Reports with incorrect and misleading information regarding consumers, including current or prospective tenants.

52.    Throughout the relevant time period, TURSS has received tens of thousands of consumer disputes about the Eviction Proceeding Records in its Consumer Reports.

53.    TURSS's failure to follow reasonable procedures to assure maximum possible accuracy of Consumer Reports caused, or was likely to cause, consumer injuries, such as prolonged housing searches, additional application fees, time and money spent correcting errors in Tenant Screening Reports, higher rental payments, temporary housing costs, and denial of housing.

**Failure to Identify the Sources of Information in Consumer File Disclosures**

54.    Section 609(a) of the FCRA, 15 U.S.C. § 1681g(a), generally requires Consumer Reporting Agencies to, among other things, "upon request, . . . clearly and accurately disclose to the consumer: (1) All information in the consumer's file at the time of the request . . . [and] (2) The sources of the information . . . " ("File Disclosure").

55.     This statutory requirement is important because it enables consumers to dispute an inaccuracy at the source to help prevent the reoccurrence of the inaccuracy in information that the source provides to third parties.

56.     TURSS obtains public record information, including criminal records and Eviction Proceeding Records, for inclusion in its background screening reports from multiple sources, including directly from the jurisdiction, through court-managed databases or records, and from third-party vendors.

57.     In numerous instances where TURSS obtained criminal records and Eviction Proceeding Records from third-party vendors—such as LexisNexis—TURSS failed to identify the third-party vendor as a source of the criminal record and Eviction Proceeding Record information in File Disclosures to consumers.

58.     Prior to June 2021, when a consumer requested a File Disclosure from TURSS, TURSS provided the consumer with a File Disclosure that identified the jurisdiction for the criminal record or Eviction Proceeding Record as the sole source of the information even when, in fact, TURSS obtained the information from a third-party vendor source.

59.     In June 2021, TURSS began disclosing LexisNexis as a source of Eviction Proceeding Record information. TURSS only took this step after receiving a Civil Investigative Demand from the FTC. In June 2022, TURSS began disclosing third-party criminal data vendors as sources.

60.     TURSS's prior failure to disclose its third-party vendors as a source of criminal records and Eviction Proceeding Records was knowing and reckless.

## Count I – Violations of Section 607(b) of the FCRA

61.     As described in Paragraphs 23 through 53, and in numerous instances, Defendant TURSS has failed to follow reasonable procedures to assure maximum possible accuracy of Consumer Report information.

62.     By and through the acts and practices described in Paragraph 61, Defendant TURSS has violated Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b).

63.     By and through the acts and practices described in Paragraph 11, Defendant Trans Union LLC has violated Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b).

## Count II – Violations of Section 609(a) of the FCRA

64.     As described in Paragraphs 54 through 60, and in numerous instances, Defendant TURSS has failed to disclose the sources of information contained in a consumer's file in response to consumers' requests.

65.     By and through the acts and practices described in Paragraph 64, Defendant TURSS has violated Section 609(a) of the FCRA, 15 U.S.C. § 1681g(a).

66.     By and through the acts and practices described in Paragraph 11, Defendant Trans Union LLC has violated Section 609(a) of the FCRA, 15 U.S.C. § 1681g(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court:

a.  permanently enjoin Defendants from committing future violations of the FCRA and the FTC Act;

b.  impose civil money penalties against Defendants;

c. award such monetary relief as the Court finds necessary, including but not limited to refund of moneys paid, restitution, disgorgement or compensation for unjust enrichment, and payment of damages;

d. order Defendants to pay the FTC's and Bureau's costs incurred in connection with proceeding with this action; and

e. award additional relief as the Court determines to be just and proper.

Dated: October 12, 2023

Respectfully submitted,

FEDERAL TRADE COMMISSION

Benjamin Wiseman
*Associate Director*

Robert Schoshinski
*Assistant Director*

Tiffany George
*Assistant Director*

s/Whitney Moore
_____
Whitney Moore (DC No. 496842)
Jarad Brown (CA No. 294516)
Attorneys

Federal Trade Commission
Division of Privacy and Identity Protection
600 Pennsylvania Avenue NW
Mail Stop CC-6315
Washington, DC 20580
(202) 326-2645 (Moore)
(202) 326-2927 (Brown)
(202) 326-3392 (Fax)

Email: wmoore@ftc.gov
Email: jbrown4@ftc.gov

Attorneys for the Plaintiff Federal Trade
Commission

CONSUMER FINANCIAL PROTECTION
BUREAU

Eric Halperin
*Enforcement Director*

Richa Shyam Dasgupta
*Deputy Enforcement Director*

Susan Torres
*Assistant Deputy Enforcement Director*

s/Emily Sachs
_____
Emily Sachs (VA No. 82437)
Phillip Harris (NC No. 39740, AZ No. 036513)
Joseph Sanders (IL No. 6308241, NY No.
4397204)
Rebecca Smullin (DC No. 1017451, CA No.
250274)
Enforcement Attorneys

Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
(202) 435-9424 (Sachs)
(202) 435-7768 (Harris)
(202) 435-9642 (Sanders)
(202) 435-7546 (Smullin)

Email: emily.sachs@cfpb.gov
Email: phillip.harris@cfpb.gov
Email: joseph.sanders@cfpb.gov
Email: rebecca.smullin@cfpb.gov

Attorneys for the Plaintiff Consumer Financial
Protection Bureau

16